IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL ACTION NO. 5:19-CR-00006-KDB-DSC-1

| UNITED STATES OF AMERICA, | |
|---|---|
| v. | **ORDER** |
| JAMIE MARIE SIGMON | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant Jamie Marie Sigmon's *pro se* emergency motion for reconsideration of compassionate release under 18 U.S.C. § 3582(c)(1) and the First Step Act of 2018. (Doc. No. 35). The Government opposes the motion. Because Defendant has not met her burden to establish that a sentencing reduction is warranted under 18 U.S.C. § 3582(c), the Court will deny her motion.

I.  BACKGROUND

From at least 2015 through 2018, Defendant participated in a methamphetamine trafficking conspiracy that distributed methamphetamine in Catawba County in the Western District of North Carolina. (Doc. No. 22, at 3). During the conspiracy, Defendant was supplied with approximately 6 to 8 ounces of methamphetamine multiple times a week for approximately one year so that she received at least 36 pounds (approximately 16 kilograms) during that one-year period. *Id.* Between January and March of 2018, Defendant made three trips to Atlanta, Georgia, where she obtained approximately 9 kilograms of methamphetamine and brought it back to North Carolina for distribution to customers. *Id.,* at 4. During the conspiracy, the amount of methamphetamine

that was known to or reasonably foreseeable to the Defendant was in excess of 15 kilograms but less than 45 kilograms. *Id.*

On August 14, 2019, Defendant was sentenced to 114 months imprisonment. (Doc. No. 28, at 2). Defendant is a 34-year-old female serving her prison sentence at Federal Prison Camp (FCP) Alderson, a minimum-security camp located in Alderson, West Virginia. Her current projected release date is March 20, 2027. Defendant bases her current motion again on the threat posed by the COVID-19 pandemic and states that she suffers from obesity, hypertension, asthma, and hepatitis C which place her at a greater risk of death from COVID-19 complications. (Doc. No. 35, at 7). The Government responded to Defendant's current motion on January 25, 2021, opposing Defendant's request and asking the Court to deny her motion. (Doc. No. 37).

## II. LEGAL STANDARD

By statute, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of the exceptions to this general rule is a motion for compassionate release. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, now provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment.—**The Court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction

> . . .
>
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).

While the statute references an applicable policy statement, there is as of now no applicable policy statement governing compassionate release motions filed by defendants. *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020). As a result, district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. *Id*. Thus, to succeed on a motion for compassionate release under 18 U.S.C. § 3582(c), a defendant must first exhaust his administrative remedies as described by the statute. Once the defendant has exhausted his remedies, the court determines whether extraordinary and compelling reasons warrant a reduction and considers the relevant sentencing factors under § 3553(a) to determine if an individualized application of those factors support compassionate release. A defendant seeking compassionate release has the burden of establishing that such relief is warranted. *See, e.g.*, *United States v. Ebbers,* 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020); *United States v. Heromin,* No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

### III. DISCUSSION

A. *Exhaustion of Administrative Remedies*

A prisoner may bring a motion for compassionate release before the court only if he "has fully exhausted all administrative rights to appeal a failure" of the BOP to bring a motion on his behalf or if 30 days have passed since the warden received his request, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Courts are split over whether the exhaustion requirement is jurisdictional or is a "case processing" rule that can be waived. *Compare United States v. Brown*, No. CR 12-20066-

37-KHV, 2020 WL 1935053, at *1 (D. Kan. Apr. 22, 2020) ("The requirement to exhaust administrative remedies or wait 30 days after the warden receives a request is jurisdictional.") *with United States v. Alam*, -- F.3d --, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) (holding the administrative exhaustion requirement is non-jurisdictional). The majority view is that the exhaustion requirement is a non-jurisdictional requirement that can be waived. *See, e.g.*, *United States v. Smith*, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *2-3 (S.D.N.Y. Apr. 13, 2020) (collecting cases).

If the rule is not jurisdictional, then it can be waived, forfeited, or abandoned, and is otherwise subject to exceptions. *See United States v. Zekerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *5 (S.D.N.Y. Apr. 14, 2020). Such an exception may include where the exhaustion requirement would be futile. *See, e.g.*, *Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) ("[I]n light of the urgency of Defendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [c]ourt waives the exhaustion requirement of Section 3582(c)(1)(A).").

Defendant's previous motion for compassionate release was denied without prejudice to a renewed motion properly supported by evidence and after exhaustion of her administrative remedies. (Doc. Nos. 34). Subsequent to being denied by the warden, Defendant filed an administrative appeal with the Mid-Atlantic Regional Office which was received on July 15, 2020 and was denied on August 29, 2020. (Doc. No. 35, Exhibit 2, at 6). The Defendant filed an appeal with the Central Office which was received on September 30, 2020 and was denied on November 10, 2020. *Id.,* at 8, 9. The Government does not argue that Defendant's motion should be denied

for failure to exhaust her administrative remedies. It appearing that Defendant has exhausted her administrative remedies and without objection by the Government, the Court will proceed to address the merits of Defendant's motion.

    *B. Extraordinary and Compelling Reasons*

Defendant asserts that her vulnerability to COVID-19 is an "extraordinary and compelling reason" for an immediate reduction in her sentence. Defendant's BOP medical records reflect that she suffers from asthma, high blood pressure and obesity, which is a risk factor the CDC has identified as increasing an individual's risk of severe illness from COVID-19.[1] (Doc. No. 37, Exhibit 2, at 9, 10, 39). The medical records also show that Defendant's hepatitis C is in remission. *Id.* at 39. Despite her fears relating to contracting COVID-19 while incarcerated, Defendant is only 34 years old and does not appear to be in imminent danger. At present, Defendant's medical conditions appear to be appropriately managed at the facility. (Doc. No. 37, Exhibit 2). According to BOP records, no inmate has died from COVID-19 at FPC Alderson and no inmate is currently positive for the disease while twelve inmates have recovered. Moreover, BOP has begun vaccinating inmates with a goal of having first doses to all correctional facilities by mid-February.

The disease remains fairly widespread throughout the State of North Carolina, and specifically Catawba County, where Defendant says she would return to live with her family if released. As of January 25, 2021, there have been a total of 723,445 confirmed cases of COVID-19 in North Carolina among the general public, with more than 3,200 currently hospitalized in the state. *See* NCDHHS: *COVID-19 North Carolina Dashboard*, https://covid19.ncdhhs.gov/dashboard. In Catawba County, there have been 14,964 reported cases and 227 reported deaths. *Id.* Moreover,

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

Catawba County has averaged 1,270 cases per 100,000 of the population over the last two weeks. *Id.* Given the fact that no inmates are currently positive for COVID-19 at FPC Alderson, Defendant has not established she would be less vulnerable to contracting COVID-19 if released into the community than she is while incarcerated. *See United States v. Johnson,* 2020 WL 2114357, at *2 (E.D. Wash. May 4, 2020) (defendant with severe asthma, at SeaTac, where there are no cases, does not show she would be at less risk in the community); *United States v. Condon,* 2020 WL 2115807 (D.N.D. May 4, 2020) (defendant has served about half of 180-month drug sentence; is 61 and suffers from asthma, COPD, cardiovascular disease, hepatitis C, hypertension …, but there are no cases at the facility and no showing she would be safer in the community); *United States v. Feiling,* 2020 WL 1821457 (E.D. Va. Apr. 10, 2020) (71-year-old suffers from a variety of ailments putting him at risk of an adverse outcome from COVID-19, but he does not show a greater risk of contracting the disease in prison, in relation to his risk in the community).

Accordingly, the Court finds that Defendant has not shown that "extraordinary and compelling reasons" support her release.

## IV.  ORDER

For these reasons, Defendant's *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)," (Doc. No. 35), is **DENIED**.

**SO ORDERED.**

Signed: January 27, 2021

Kenneth D. Bell
United States District Judge